UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARLENE JORDAN, | Case No. C13-2280RSM |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANTHONY R. FOXX, Secretary, U.S. Department of Transportation, | |
| Defendant. | |

## I.      INTRODUCTION

This matter comes before the Court on Defendant's Motion for Summary Judgment. Dkt. #47. Defendant asks this Court to dismiss Plaintiff's case in its entirety on the basis that she fails to raise any genuine dispute with a material fact as to alleged discrimination or retaliation and therefore her claims fail as a matter of law. *Id.* Plaintiff argues that she has demonstrated a genuine dispute as to material facts in this matter, specifically with respect to inferred discrimination and retaliation, and therefore Defendant's motion fails and this matter must proceed to trial. Dkt. #50. For the reasons discussed herein, and having considered the oral arguments on May 12, 2015, the Court disagrees with Plaintiff and GRANTS Defendant's motion.

///

///

ORDER
PAGE - 1

## II.      BACKGROUND

Plaintiff, Marlene Jordan, is an African American woman.  Dkt. #51, Ex. A at 25:15-17.
Ms. Jordan has worked for the Federal Aviation Administration ("FAA"), a subdivision of the
Department of Transportation ("DOT"), since 1998.  Dkt. #52 at ¶ 2.  She is currently
employed as a Management and Program Analyst, also known as a Staffing Specialist, on the
Employee Services Team ("EST") in Renton, Washington.  Dkt. #52 at ¶ 2.  She has worked in
that position since 2007.  Her seniority level is characterized as "H-band."  *Id.*

The events leading to this action occurred in 2011.  At that time, Ms. Jordan's
Supervisor was Norma Johnson.[1]  Norma began working at the FAA in the 1980s as a
secretary, before joining the Human Resources Division.  Dkt. #49, Ex. A at 10:22-11:9.  For a
portion of her career, Norma worked as an EEO investigator within the FAA.  Dkt. #49, Ex. A
at 17:5-14.  In approximately 2009, Norma became the manager of the EST, and Ms. Jordan's
first line supervisor.  Dkt. #48 at ¶ 2.  As manager of the EST, Norma was responsible for
approximately 15-18 employees, the majority of them women, and had the ability to hire and
fire.  Dkts. #51, Ex. B at 11:9-17 and #49, Exs. B and C.  Norma was also responsible for
directing and managing her employees, including "evaluating performance, coaching and
developing staff."  Dkt. #49, Ex. G.

During the years that Ms. Jordan was supervised by Norma, she received satisfactory
performance reviews, although Ms. Jordan describes her performance as "exceptional."  *See*
Dkt. #49, Exs. I-K and H at 128:16-129:4.  However, Norma did note deficiencies in Ms.
Jordan's performance as well.  For example, in one of her performance evaluations Norma

---

[1]  There are two female individuals involved in this matter with the last name of Johnson,
Norma Johnson and Jennifer Johnson, who are not related to each other.  For clarity, and
without intending any disrespect to either of the Johnsons, the Court will refer to them in this
Order by their first names.

ORDER
PAGE - 2

noted that feedback from Ms. Jordan's customers was not positive, customers were uncomfortable going to Ms. Jordan for assistance and lacked confidence in her knowledge and expertise, Ms. Jordan was perceived by her colleagues as reluctant to do more than what was minimally required, and she was often not accountable for her own actions. Dkt. #49, Exs. I at 4 and K at 8. On another occasion Norma noted that Ms. Jordan had failed to deliver on a brochure project she had been assigned. Dkts. #49, Ex. K at 7-11 and #48, Ex. A at 9. Norma documented her various verbal conversations and coaching with Ms. Jordan, noting other performance deficiencies. Dkt. #48, Ex. A. However, Ms. Jordan has never received any corrective action, nor has she ever been placed on a Performance Improvement Plan. Dkt. #52 at ¶ 4.

On November 21, 2010, Norma temporarily promoted Ms. Jordan from her H-band position to an I-band level Management & Program Analyst position. Dkt. #49, Ex. A at 82:11-83:11, Ex. N and Ex. H at 70:9-12. In that position, Ms. Jordan's "customer" was the Tech Ops Service Center, and she was responsible, *inter alia*, for advising managers about hiring and moving employees. Dkt. #49, Ex. A at 83:14-84:10. The promotion was granted on a "non-competitive" basis, meaning that Ms. Jordan did not need to apply for the position. *Id.*, Ex. H at 70:17-22.

According to Defendant, the temporary promotion did not go well for Ms. Jordan. Dkt. #47 at 6-7. Defendant notes that Ms. Jordan had serious performance issues throughout the time she was in that position, including one instance where she failed to process a customer's detail request in a timely manner, resulting in the abandonment of the request (the "Baden" error), and another instance where she incorrectly processed an employee request, resulting in an employee reporting to work and working in the position for more than a month before

Norma noticed that the detail had not been fully approved (the "Bowen" error).[2]  Dkt. #49, Exs. A at 67:11-68:14, H at 131:25-132:6, R and S, and #48, Ex. A.  The promotion ended on February 28, 2011, and Ms. Jordan was returned to her former position.  Ms. Jordan does not dispute that during a discussion with Norma she (Ms. Jordan) told Norma that the position was "over her head and overwhelming" to her.[3]  *See* Dkts. #49, Ex. A at 45:15-24 and #50.  In fact, Ms. Jordan fails to discuss her temporary I-band promotion at all in her briefing.  *See* Dkt. #50.

Shortly after Ms. Jordan's promotion ended, Norma discovered and addressed the Bowen error with Ms. Jordan.  *See* Dkt. #48, Ex. A and #49, Ex. S.  According to Ms. Jordan, on March 10, 2011, Norma confronted her in her cubicle, standing very close to her and speaking in a loud, angry voice, in the presence of her co-workers.  Dkt. #52 at ¶ 5.  Ms. Jordan had never witnessed Norma treat anyone else this way.  *Id.*  The next day, Norma called Ms. Jordan into her office and again spoke to her about the error.  *Id.* at ¶ 6.  Ms. Jordan asserts that Norma "berated" her to the point of tears and threatened her job.  *Id.*  Norma denies yelling at Ms. Jordan at her cubicle, but explained that she had taken written notes of their March 11th discussion because the discussion had been "intense."  Dkts. #51, Ex. B at 83:24-84:15 and #54, Ex. D at 56:21-25.

As a result, Ms. Jordan contacted the EEO hotline and made an informal complaint about the March 10th and 11th interactions, alleging disparate treatment based on race and sex.

---

[2]  Based on the dates of various exhibits submitted in this action, it appears that the Bowen error was not discovered and addressed until after Ms. Jordan's promotion ended.  *See*, *e.g.*, Dkt. #49, Ex. S.

[3]  During oral argument, Ms. Jordan's counsel acknowledged that Ms. Jordan had felt this way during her promotion, but argued that it was because Ms. Jordan was doing the work of what had previously been accomplished by two people.  Additionally, Ms. Jordan's counsel argued that Ms. Jordan had "been set up to fail" by Norma when she was promoted to the prior I-band position.  However, that assertion was not propounded by Ms. Jordan in her briefing, and therefore there is nothing cited in the record before the Court to support that assertion.

ORDER
PAGE - 4

Dkts. #51, Ex. P and #52 at ¶ 7.  On June 14, 2011, Ms. Jordan and Norma participated in mediation and resolved the complaint.  Dkt. #51, Ex. P.

On June 30, 2011, the FAA posted vacancy announcement "ANM-ATO-11-0977682-21578, Series FV-343-1" for an I-band level Management & Program Analyst position for a different customer than whom Ms. Jordan had previously worked.  Dkt. #49, Ex. T.  This was not the same position that Ms. Jordan had previously temporarily filled, although it was the same I-band level of promotion.  This position was permanent, and would support the Service Center's En Route operations unit.  Dkt. #49, Exs. T and U at 62:20-63:5.

Nine people applied for this position, including Ms. Jordan and the person who ultimately filled the position, Jennifer Johnson.  Dkt. #49, Exs. V, W and X.  The position was an I-band level, and would have been a promotion for both Ms. Jordan and Jennifer who were both in H-band positions at the time.  Sue Fletcher, a lead HR staffing specialist, reviewed the applications and created a "referral list" of qualified candidates from which Norma Johnson could hire.  Dkt. #49, Ex. Y at 44:24-45:18.  Ms. Fletcher issued the referral list on July 14, 2011.  Dkt. #49, Ex. Z.  There were three candidates on the list – Ms. Jordan, Jennifer Johnson, and a male employee.  *Id.*

To provide a "totally objective assessment" of the job candidates, Norma convened an interview panel of three employees to conduct the interviews and to make a hiring recommendation.[4]  Dkt. #49, Exs. O at 2, Response to Interrogatory No.3 and DD.  The panel members were: Paige Anderson – Team Lead, Organizational & Employee Performance Team, ASG; Cindy Alexander – Senior Advisor, Western En Route & Oceanic Operations; and Monique France – Executive Advisor, Western Terminal Operations.  Dkt. #49, Ex. EE.  The

---

[4]  During oral argument, Plaintiff's counsel conceded that nothing required Norma to convene such a panel, and she could have made the hiring decision herself without a panel recommendation.

ORDER
PAGE - 5

panel reviewed the candidates' written materials, and then held interviews, asking each person the same questions. *Id.* The panel found that Jennifer had a superior written "applicant package," and assigned her a score of 53 on the Applicant Package Review score sheet. *Id.* at 5. Plaintiff received a lower score of 49 on her written materials, *id.*, but presented better verbal communication skills than Jennifer during her interview. *Id.*, Ex. O at 2, Response to Interrogatory No. 3; *see also* Dkt. #49, Exs. FF, GG and HH. Ultimately, the panel found both candidates equally qualified for the position and referred both to Norma for further consideration for the position. *Id.*, Ex. EE.

Norma was not confident that either candidate was really ready for the promotion. Dkt. #49, Ex. M at 2. Therefore, instead of hiring a candidate for the permanent position, and at the suggestion of Cindy Alexander (who was the representative of the customer who was going to be served), Norma decided to temporarily promote Jennifer to see if she was a good fit. Dkt. #40, Ex. O, Response to Interrogatory No. 3 and Ex. M. Norma had already provided Ms. Jordan with such an opportunity by temporarily promoting her to an I-band manager position several months earlier, albeit for a different customer. *Id.* Norma met with both Ms. Jordan and Jennifer on August 2, 2011, to inform them of her plan. *Id.*. Norma also informed Ms. Jordan that if Jennifer did well in the position, she would be made permanent. Dkt. #49, Ex. H at 124:7-22 and Ex. M. According to Norma, Jennifer performed exceptionally well during her promotion. Dkt. #49, Ex. O, Response to Interrogatory No. 6. As a result, Jennifer was hired permanently to the position. *Id.*

On March 31, 2012, Ms. Jordan filed an EEO Complaint alleging that Norma had discriminated against her based on race and sex, and had retaliated against her based on her

ORDER
PAGE - 6

prior EEO complaint, when she was not selected for the I-band promotion given to Jennifer.[5] Dkt. #49, Ex. RR.  That complaint ultimately led to the instant litigation.

### III.   DISCUSSION

**A. Legal Standard for Summary Judgment Motions**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).    In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).  Material facts are those which might affect the outcome of the suit under governing law.  *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party.  *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 251.

---

[5]  Plaintiff has filed three other EEO Complaints while employed with the FAA – one in 2009, which resulted in a finding that no discrimination had occurred (Dkt. #49, Ex. QQ); one in 2013, which is currently being litigated in the Court of Federal Claims (Case No. C13-0995-CFL); and one in 2014, which was resolved through mediation (Dkt. #49, Ex. UU).  Two of those claims were made against different male supervisors (Dkt. #49, Exs. QQ and UU), and the claim in the Court of Federal Claims alleges pay discrimination based on race and sex and retaliation for making EEO complaints (Case No. C13-0995-CFL).

ORDER
PAGE - 7

**B. Title VII Legal Standards**

Plaintiff alleges that she suffered discrimination based on her race, and retaliation based on her prior filing of EEO complaints, when she failed to receive a promotion at work.  Dkt. #46.  She brings her claims under Section 717 of the Civil Rights Act of 1963, 42 U.S.C. § 2000e-16 ("Title VII").  Dkt. #46 at ¶¶ 15-23.  The Court addresses each of these claims, in turn, below.

*1.  Title VII Race Discrimination*

Title VII makes it an unlawful employment practice to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2.  Disparate treatment occurs "where an employer has treated a particular person less favorably than others because of a protected trait."  *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012).  In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), the Supreme Court "'set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment.'"  *Rashdan v. Geissberger*, 764 F.3d 1179, 1182 (9th Cir. 2014) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination.  Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.  Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Id.* (internal citations and quotation marks omitted).

///

ORDER
PAGE - 8

a. *Prima Facie* Claim

In order to prove a *prima facie* claim of Title VII discrimination based on race, Plaintiff must show that: (a) she belonged to a protected class; (b) she was qualified for her job; (c) she was subjected to an adverse employment action; and (d) similarly situated employees not in her protected class received more favorable treatment. *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006) (citing *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818 (9th Cir. 2002)). *See* 42 U.S.C. § 2000e-3(e). Plaintiff makes such a showing here. There is no dispute that Plaintiff is a member of a protected class as an African-American; nor is there any dispute that she was found by an impartial interview panel to have been qualified for the job for which she applied, or that she suffered adverse employment actions when she was denied the promotion for which she applied. *See Burlington v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) (explaining that an adverse employment action includes "significant change in employment status," such as failing to promote). In addition, another woman, who is Caucasian, received the promotion instead.[6]

b. Legitimate, Non-Discriminatory Reason for Failure to Promote

Accordingly, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for promoting Jennifer over Ms. Jordan. Defendant has done so. Indeed, as set forth above, Defendant asserts that the position was given to Jennifer because she was equally qualified as Ms. Jordan, and because she performed "exceptionally" when she was temporarily placed in the position. Dkt. #49, Ex. O, Response to Interrogatory No. 6. Further, Norma had previously provided Ms. Jordan with a temporary promotion in an I-band position with similar duties and levels of responsibility, and Ms. Jordan does not dispute that she told

---

[6] During oral argument, Defendant appeared to have conceded that Ms. Jordan could make a *prima facie* claim of discrimination given than counsel addressed Ms. Jordan's *prima facie* case, or lack thereof, only with respect to the retaliation claim.

ORDER
PAGE - 9

Norma the prior position was "over her head and overwhelming" to her.  *See* Dkts. #49, Ex. A at 45:15-24 and #50.   Further, Ms. Jordan acknowledged during her deposition that, in determining who was the best fit for the I-band promotion, Norma had "a right to look at everything" with respect to her performance.   Dkt. #49, Ex. H at 133:14-134:10.   Norma ultimately determined that because of Ms. Jordan's past performance, she was not fit for the promotion.

     c.   Pretext

As a result, the burden shifts back to Plaintiff to demonstrate pretext.   Once the employer has provided non-discriminatory reasons for the adverse action, "the presumption of discrimination 'drops out of the picture,'" and the Court determines based on the evidence in the record whether a reasonable jury could conclude that the FAA discriminated against Ms. Jordan on the basis of race.  *See Cornwell v. Electra Cent. Credit Union,* 439 F.3d 1018, 1028 (9th Cir. 2006) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).   The Court finds that no jury could do so in this case.

As an initial matter, Plaintiff has presented no direct evidence of discrimination.  *See* Dkt. #50.   Indeed, Plaintiff has testified that no one at the FAA, including Norma, has ever directed slurs or any other derogatory language at her about her race.  Dkt. #49, Ex. H at 23:22-24:8.   Further, Norma chose Ms. Jordan for a previous I-band promotion, suggesting that she did not harbor discriminatory animus toward Plaintiff because of her race.[7]  *See EEOC v. Boeing Co.*, 577 F.3d 1044, 1051-52 (9th Cir. 2009) (noting this factor).

[7]  Again, the Court rejects Plaintiff's counsel's argument that she was only promoted in an effort to set her up to fail so that her failure could be used against her at a later time, as Plaintiff has not briefed that argument and therefore provides nothing in the record to support such a contention.  Moreover, Plaintiff's counsel did not point to anything in the record during oral argument that would have supported her contention.

ORDER
PAGE - 10

Instead, Ms. Jordan spends much of her brief focusing on the allegedly "flawed" administrative process used to promote Jennifer, arguing that it supports an inference of discrimination based on race.  *See* Dkt. #50 at 8-15 and 20-24.  It is true that circumstantial evidence may be used to show pretext, provided that the evidence "give[s] rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).  However, "[c]ircumstantial evidence of pretext must be specific and substantial in order to survive summary judgment." *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001) (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998)).  There is no substantial evidence on this record that Ms. Jordan was denied a promotion based on a discriminatory motive, and her reliance on alleged anomalies with the process used to hire Jennifer is not persuasive.

Plaintiff complains that the hiring procedure "changed mid-stream" when Norma allowed Jennifer a temporary promotion to see if she was a good fit.  Dkt. #50 at 8.  She further argues that she was not allowed the same opportunity and Norma has "proffered conflicting and changing explanations of what happened and why." *Id.*  These allegations are not supported by the record.

First, Defendant has provided evidence that temporary promotions are not uncommon within the FAA.  Dkt. #49, Ex. OO.  While Plaintiff complains that the comparative temporary promotions offered by Defendant are distinguishable from Ms. Jordan's situation, Dkt. #50 at 13-15, the Court finds that they are sufficiently analogous to rebut an inference of race discrimination, as they all demonstrate the practice of testing an employee on a temporary basis before making a position permanent.

ORDER
PAGE - 11

Second, Plaintiff completely ignores her previous temporary promotion to an I-band position during which Norma was her supervisor, and which occurred just months before she applied for the promotion at issue here.  While Plaintiff's counsel asserted during oral argument that Ms. Jordan had been set up to fail, she also highlighted that Plaintiff completed the temporary promotion and was not removed from it before its scheduled end date, nor was she given any kind of performance improvement plan during the promotion.  Notably, Plaintiff's counsel also did not make any assertion, nor is there anything in the record that so demonstrates, that Plaintiff was somehow forced into a temporary promotion that she did not want.  By all accounts, she accepted the promotion to learn new skills to use toward career advancement.  *See* Dkt. #49, Ex. H at 70:9-72:2.  The Ninth Circuit Court of Appeals has long recognized that recent positive employment decisions made by the same actors who later make an adverse employment decision against an employee gives rise to an inference that no discrimination took place.  *See EEOC v. Boeing Co.*, 577 F.3d at 1051-52.

Third, the decision to temporarily promote Jennifer (and then make her permanent if she performed well) was made and conveyed to Ms. Jordan prior to the alleged anomalies in the process used to make Jennifer permanent in that position.  *See* Dkt. #49, Ex. H at 124:7-22 and Ex. M.  This is significant because Ms. Jordan asks the Court to infer racial discrimination from Defendant's alleged deviances from its written policies after a decision to promote had already been made.  In such circumstances, Plaintiff cannot demonstrate that the actions are evidence that Norma's stated reasons for promoting Jennifer are pretext for racial discrimination.  The Court is not persuaded otherwise by the authority offered by Plaintiff.  Plaintiff relies primarily on *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108 (9th Cir. 2011), an age discrimination case, in which the Ninth Circuit Court of Appeals found that where the employer treated

ORDER
PAGE - 12

younger employees differently than the older Plaintiff in applying a disciplinary policy, there arose a triable issue as to pretext.  *Earl*, 658 F.3d at 1114.  Plaintiff does not present comparable policy violations in the instant matter.  Moreover, even assuming that these alleged deviations are accurate, Ms. Jordan fails to point to any fact from which the Court could infer a connection between the deviations and the allegation that Norma deviated from policy because of Plaintiff's race.

Likewise, the Court rejects Plaintiff's argument that pretext may be inferred because Norma's reasons for promoting Jennifer have changed throughout the litigation process.  Dkt. #50 at 8.  The record reveals that Norma informed Ms. Jordan of her reasons for promoting Jennifer on August 2, 2011.  Dkt. #49, Ex. M.  These reasons are also documented in written notes.  *Id.*  While Ms. Jordan disputes Norma's characterization of her performance, she does not dispute that Norma conveyed the reasons for promoting Jennifer during the meeting.  Dkt. #49, Ex. H at 124:722 and 126:9-127:18.  The only "change" in that reason that Plaintiff points to is a notation in a memo written by someone other than Norma stating that no selection was made at the time due to "staffing issues/levels."  Dkt. #50 at 8.  However, this comment was not attributed to Norma (in fact the person who wrote the memo stated it was her own hand-written note), and the person who wrote the memo testified that this language is a generic comment used whenever managers decide not to fill vacancies.  Dkt. #56, Ex. E at 42:7-43:4.  Finally, the person who wrote the notation testified that it was made when the vacancy announcement was closed, not because it was Norma's stated reason to promote Jennifer and not to promote Ms. Jordan.  *Id.* at 43:22-44:10.

Finally, Plaintiff attempts to create an inference of discrimination by demonstrating that Norma's description of her work performance was not legitimate, relying on several emails in

ORDER
PAGE - 13

which her customers provided positive reviews of her work for them.  Dkt. #51, Ex. H.  It is true that "co-workers' assessment[s]" of a plaintiff's work should be considered because they can be "clearly probative of pretext."  *EEOC v. Boeing*, 577 F.3d 1044, 1051 (9th Cir. 2009) (adopting view set forth in and quoting *Abuan v. Level 3 Commc'ns, Inc*., 353 F.3d 1158, 1174 (10th Cir. 2003)).  However, the assessments proffered by Plaintiff are too generic in nature and too removed in time (having been solicited by Plaintiff three years after the promotion decision in question) to be probative of any inference of racial discrimination.

As the Ninth Circuit Court of Appeals has noted, "mere allegation and speculation do not create a factual dispute for purposes of summary judgment."  *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).  It is not enough for Ms. Jordan to merely point out that Jennifer, a white candidate (who was determined by an unbiased panel to be equally qualified as Ms. Jordan) was promoted and she was not.[8]  *Schiff v. City & County of San Francisco*, 528 Fed. Appx. 743, 745-46, 2013 U.S. App. LEXIS 12374, *3-4 (9th Cir. 2013).  For all of the reasons discussed herein, Plaintiff fails to demonstrate pretext, and Defendants' motion for summary judgment on this claim is granted.

    *2.  Title VII Retaliation*

The Court next turns to Plaintiff's retaliation claim.  In order to state a claim for retaliation under Title VII, Plaintiff must show: (1) that she committed a protected act, such as complaining about discriminatory practices; (2) that she suffered some sort of adverse employment action; and (3) the protected activity was the "but-for" cause of the adverse

---

[8]   During oral argument, Plaintiff's counsel acknowledged the diversity of Norma's employees, and then asserted as evidence of pretext that Norma "really had to reach" to find a white candidate to promote over Plaintiff.  This assertion is nonsensical given the context of the way in which candidates were presented to Norma for consideration.  Out of the nine people who applied for the position, only three were chosen for interviews, and the interview panel ultimately recommended Plaintiff and Jennifer.  This is not a case where Norma hand-selected Jennifer from all of her employees, on her own, and then promoted her.

ORDER
PAGE - 14

employment action.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S. Ct. 2517, 2521, 186 L. Ed. 2d 503 (June 24, 2013); *Davis v. Team Elec Co*., 520 F.3d 1080, 1093-94 (9th Cir. 2008).  But-for causation may be "inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision."  *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000) ("That an employer's actions were caused by an employee's engagement in protected activities may be inferred from proximity in time between the protected action and the allegedly retaliatory employment decision.").  *See also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (providing that for an employee to establish causation in a prima facie case of retaliation only on the basis of "temporal proximity between an employer's knowledge of protected activity and an adverse employment action, . . . the temporal proximity must be very close").

     a.  *Prima Facie* Claim

     In this case, Plaintiff alleges she was not promoted after and because she made an informal EEO complaint against Norma Johnson.  Ms. Jordan's evidence supporting her retaliation claim largely overlaps with the evidence supporting her discrimination claim.  Plaintiff alleges an actionable adverse employment action (failure to promote her to an I-band manager position) that occurred within months after she engaged in protected activity.  As noted above, Plaintiff filed an informal EEO complaint in April of 2011.  Dkts. #51, Ex. P and #52 at ¶ 7.  She resolved the complaint through mediation on June 14, 2011.  Dkt. #51, Ex. P.  Just a few weeks later, approximately two months after she initiated her complaint (and a few weeks after resolving it), Plaintiff applied for a promotion.  On August 2, 2011, she was

ORDER
PAGE - 15

informed that she would not receive it.  Although Defendant argues that this time period does not rise to the "but for" causation standard, the Court finds that given the close proximity in time and Norma's awareness (and actually being the object of) of her protected activity, Plaintiff has arguably established the causation element of her *prima facie* case.

      b.  <u>Legitimate, Non-Retaliatory Reason for Failure to Promote</u>

      As with her discrimination claim, once Plaintiff successfully establishes a *prima facie* case of retaliation, the burden of production shifts to the employer to present a legitimate, nonretaliatory reason for undertaking the adverse employment actions.  *Ray*, 217 F.3d at 1240. Here, the FAA asserts that Norma denied Plaintiff a promotion because Jennifer was equally qualified as Ms. Jordan, and because Jennifer performed "exceptionally" when she was temporarily placed in the position.  Dkt. #49, Ex. O, Response to Interrogatory No. 6.  Further, Norma had previously provided Ms. Jordan with a temporary promotion, and Ms. Jordan does not dispute that she told Norma the position was "over her head and overwhelming" to her.  *See* Dkts. #49, Ex. A at 45:15-24 and #50.  These are legitimate, nonretaliatory reasons for undertaking the adverse employment action.  Defendant has therefore met its burden of production, and the burden now shifts back to Plaintiff to show that Defendant's proffered reason for undertaking the adverse employment actions is pretext for retaliation.  *Ray*, 217 F.3d at 1240.

      c.  <u>Pretext</u>

      For the same reasons discussed above, Plaintiff has not proffered sufficient evidence of pretext.  While she may have established a *prima facie* case of retaliation on the basis of her EEO complaint, she has failed to persuade the Court that the complaint had any relation to the reason she was not promoted.  In light of Ms. Jordan's performance in her previous I-band

ORDER
PAGE - 16

position and Jennifer's exceptional performance in the I-band position at issue in this case, the Court believes that no reasonable jury could find that Plaintiff would have been promoted "but for" her EEO complaint.  *See Nassar,* 133 S. Ct. at 2533.

Nor has Plaintiff convinced the Court that Defendant's reasons for its adverse employment action are unworthy of credence.  As discussed above, Plaintiff fails to show that Defendant's legitimate, non-discriminatory reasons for taking adverse employment actions are pretextual.  Accordingly, Defendants' motion for summary judgment on this claim is also granted.

## IV.    CONCLUSION

Having reviewed Defendant's motion, the opposition thereto and reply in support thereof, along with the supporting declarations and exhibits and the remainder of the record, the Court hereby FINDS AND ORDERS:

1. Defendant's Motion for Summary Judgment (Dkt. #47) is GRANTED and Plaintiff's complaint is dismissed in its entirety.

2. This case is now CLOSED.

DATED this 11th day of May, 2015.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 17